## Litch *v.* Litch et al., Appellants.

*Equity—Decree—Staying of process—Agreement with consent of court—Equity practice.*

1. Where a decree for a money payment is entered in favor of a wife against a beneficiary under a trust created by the husband, and thereafter, by agreement of the parties and the consent of the court, proceedings to enforce the decree are stayed until a divorce proceeding by the husband against the wife is finally disposed of against the husband, such agreement and the order thereunder, after the divorce proceedings have been finally dismissed, will not affect the original decree in favor of the wife.

2. The agreement merely constituted a plan to which the court gave its consent for the supervision of further proceedings in litigation until a designated period, and it left valid and subsisting the decree, which at the final determination of the divorce litigation, the court might in its judgment decide to continue and follow or replace by a different decree.

Argued March 14, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 26, March T., 1928, by defendants, from decree of C. P. Jefferson Co., Jan. T., 1920, No. 1, on bill in equity, in case of Amelia V. Litch v. Thomas K. Litch, Blanche J. Litch and the Union Banking & Trust Co., of Dubois, Pa., trustee. Affirmed.

Bill in equity to compel payment of money out of income of trust estate. Before HARVEY, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendants appealed.

*Error assigned,* inter alia, was decree, quoting record.

*William M. Gillespie,* with him *Sebastian C. Pugliese,* and *Charles J. Margiotti,* for appellants.—By plaintiff's acceptance of the order of March 6, 1926, and procuring its provisions by agreement, she is now estopped from setting up a claim against Blanche J. Litch, the appellant: Baily v. Baily, 44 Pa. 274; Etnier v. Pascoe, 275 Pa. 308; Donnelly v. Pub. Serv. Com., 268 Pa. 345; Reese v. Adamson, 276 Pa. 253; Edward's App., 105 Pa. 103; Martin v. Ives, 17 S. & R. 363; Goodman v. Losey, 3 W. & S. 526; Smith v. Jack, 2 W. & S. 101; Ullery v. Clark, 18 Pa. 148; Kreamer v. Fleming, 200 Pa. 414.

*W. N. Conrad,* for appellee.

OPINION BY MR. JUSTICE FRAZER, April 9, 1928:

The one controlling question which emerges from the voluminous pleadings in the record before us is, Was the decree of June 7, 1921, abrogated or modified by the agreement between counsel, with approval of the court, made March 6, 1926? The decree in question was entered in equity proceedings instituted December 15, 1919, by Amelia V. Litch, appellee here, against her husband, Thomas K. Litch, and others. The bill, by subsequent withdrawals and amendments, narrowed down substantially to the prayer that the court order and decree suitable maintenance for the wife out of property of Thomas K. Litch and determine a proper amount for maintenance of herself and their daughter, whether such property was in his hands or in the hands

of others. At the time the bill was filed the property was no longer in her husband's possession. He had shortly before, by bill of sale, for a consideration of one dollar and "gratitude and affection," transferred and assigned corporate stocks and securities aggregating in value about $85,000, to his foster mother, Blanche J. Litch, his codefendant herein, who in turn immediately conveyed the property to the Union Banking & Trust Company of Dubois, in trust, reserving to herself the net income derived therefrom during her life, and providing that at her death the income, less $100 per month to be paid the guardian or guardians of the child or children of Thomas K. Litch, born in lawful wedlock, would go to defendant, Thomas K. Litch; upon the death of Litch the corpus and accrued income to go to his lineal descendant or descendants, and, in default of such, distributed among the heirs of his uncle, in accordance with the intestate laws of this Commonwealth. It will be noted that in these transfers and conveyances no provision is made for the wife, and none for the daughter, until the death of Blanche J. Litch, when the daughter, and other children, if there be any, are to receive, out of the trust income, the sum of $100 per month.

It was after these transfers that the bill was filed by appellee against her husband, joining with him Blanche J. Litch and B. M. Marlin. Later the bill was amended, with consent of court, by substituting for the name of Marlin that of the Union Banking & Trust Company of Dubois, as a defendant. An answer was filed and the case proceeded until June 7, 1921, when the court, after argument, "ordered, adjudged and decreed" that, "out of the income from the trust estate of which the Union Banking & Trust Company of Dubois, Pennsylvania, is trustee, defendant Blanche J. Litch pay, until further order of the court, the sum of $125 each month, beginning June 1, 1921, with as much regularity as the receipt of such income will admit, to

Amelia V. Litch, for the maintenance of said Amelia V. Litch and the maintenance and education of Josephine R. Litch, daughter of Thomas K. Litch and said Amelia V. Litch, his wife."

There were continuous arrearages and defaults in these payments, and the wife several times resorted to attachment proceedings to secure payment of the allowances decreed by the court. In the course of repeated litigation to enforce payments, Amelia V. Litch, on June 1, 1924, presented her petition to the court for an order upon Blanche J. Litch to pay amounts due under the decree of 1921, and on September 21, 1925, Blanche J. Litch presented her petition praying for the vacation of the decree of 1921. The grounds upon which this petition to vacate was based were allegations, not denied, that a decree of absolute divorce had been granted by the Court of Common Pleas of Jefferson County to Thomas K. Litch, in proceedings brought by him against his wife, Amelia V. Litch, and that therefore, as the relation of husband and wife had ceased between the parties, petitioner, Blanche J. Litch, had ceased to pay the $125 per month as ordered by the decree of 1921, and she prayed that the decree be vacated and set aside. These two proceedings came before the court for disposition on March 6, 1921. At that time an appeal by respondent, Amelia V. Litch, from the decree of the court in the divorce proceedings was pending in the Superior Court, and, in view of this fact, counsel representing the opposing parties, with approval of the court, agreed to defer and postpone for the present further consideration of the petition of Amelia V. Litch for allowances unpaid and the petition of Blanche J. Litch for vacation of the decree of 1921. By this agreement, as the record states, "after discussion by the counsel and the court, it was concluded that any decree entered at this time might have to be changed, and, in view of the fact of an appeal now pending in the Superior Court,......it is therefore agreed between the parties,

the plaintiff and defendant, that all of the matters
and questions raised in this case shall be held in abey-
ance, and the case remain in statu quo until the de-
cision of the Superior Court"; and, in the "meantime,"
Thomas K. Litch, as the agreement sets forth, was to
pay Amelia V. Litch the sum of $420 for the support
and maintenance of the daughter "up to the 1st day
of April, 1926, and thereafter to deposit in the Jefferson
County National Bank the sum of $30 per month for
the boarding" of the daughter, "until this case come
up for a final hearing." It was also stipulated in the
same agreement that the lump sum of $420 and the
$30 per month "shall be taken as a credit on the sum
that the court may find that the said Thomas K. Litch
shall pay for the support and maintenance of his wife
and child"; and it was further agreed that, "if the
case in the Superior Court is reversed, then the question
of what would be awarded in this case is to remain
for the final determination of the court."

The Superior Court sustained the appeal of the wife
and reversed the decree of the lower court in the action
for divorce. Litch v. Litch, 89 Pa. Superior Ct. 15.
Further hearing on the deferred proceedings was re-
sumed and held June 28, 1927, and on July 19, 1927,
the court, in an opinion filed, directed that the "order"
or agreement of 1926 neither abrogated nor modified
the decree of 1921, and ordered and decreed that Blanche
J. Litch pay to Amelia V. Litch, out of the income of
the trust estate, less the payments made under the
agreement of March 6, 1926, the sum of $3,180, being
the payments due June 30, 1927, and the further sum
of $149.67 interest, and pay the record costs incurred
in the proceedings. From this decree the present appeal
is taken.

Of the various assignments of error presented by
appellant, we deem it necessary to consider but one,
as it covers the conclusion of the court below, in which
we fully concur, and is, in our opinion, the controlling

question involved in this appeal, namely, that the court erred in its conclusion "that the agreement or order of March 6, 1926, does not change nor modify the order of June 7, 1921, in any of its essential terms or conditions." In our opinion it cannot be held, either by its terms or by its intent, that the agreement of 1926, is a "decree" of the court, or that it may be construed, even by implication, that the purpose either of counsel or the court was that it should change, much less abrogate and set aside, the actual decree of 1921. The latter is a valid and conclusive order and command of the court, which, by its own terms, "ordered, adjudged and decreed" that certain things be done. It was in fact a final money decree explicitly providing for the payment of a sum adjudicated, and in the subsequent pleadings it was expressly admitted by appellant that "there is no denial of the order." Of an entirely different nature and purpose was the "order" of 1926. By its terms it is merely an understanding between the parties, with the approval of the court, to postpone and suspend all matters and questions that might be raised in the proceedings then pending until after the decision of the Superior Court in the divorce appeal should be announced, that in the "meantime" the case remain in statu quo and that, also in the "meantime," certain payments, as a temporary adjustment, be made and continued until the case should be finally disposed of by the court. Here, then, was no finality, nothing concluded, nothing "ordered, adjudged and decreed." Neither those terms nor others of similar import are used in the agreement. Its terms and adjustments are wholly conditional and temporary, in no wise final and conclusive. Clearly it rescinded none of the directions of the decree of 1921. It does not refer to it even indirectly, and can have, as we read it, no bearing whatever upon the former order. As the learned court below justly says: "Instead of modifying the order of June 7, 1921, special pains were exercised to preserve it

intact." The agreement, by which nothing was decreed, constituted a plan, to which the court gave its assent, for the postponement and suspension of further proceedings in litigation until a designated period, and it left valid and subsisting a decree of the court, which, at the final determination of that litigation, the court might in its judgment decide to continue and follow, or replace by a different decree. And when the decision of the Superior Court in the divorce appeal was announced and the suspended court proceedings resumed, the court, in its final determination, recognized the validity and continued existence of the order of 1921, and decreed payment of arrears of allowances made by it.

Certainly the justification of the decree of 1921 was ample. Thomas V. Litch, possessing large financial means, had, by his negligent and brutal treatment of his wife, compelled her to leave her home and separate from him. She had no means of subsistence and was dependent, with her daughter, upon the bounty of her father. The husband followed a career of debauchery, adultery and bigamy, and, while thus living in riotous luxury and shame, his wife and child were compelled to rely upon the kindness of relatives for a mere existence; and it is plainly manifest that the transfer of his property to his foster mother and her prompt retransfer to the trust company, in trust, with the income payable to her while she lived and to him after her death, with no provision whatever for the support of the wife and a meagre monthly allowance for the maintenance of his child, was simply the completion of a scheme by which to enable him to keep control of his wealth, receive the income from an indulgent foster mother, and continue to deprive his wife and child of the necessities of life and leave them without the home and protection that are justly theirs.

The judgment of the court below is affirmed at appellant's costs.